The People of the State of Illinois, Plaintiff-Appellee, *v.* Michael Glenn Bell, Defendant-Appellant.

(No. 73-4;

Third District—March 29, 1974.

Donald Stoffel, of Galesburg, for appellant.

Donald Woolsey, State's Attorney, of Galesburg, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

The defendant, Michael Glenn Bell, pleaded guilty to a charge of attempt murder and was sentenced on October 16, 1972, by the Circuit Court of Knox County to serve 5 to 10 years in the penitentiary. He appeals that judgment, contending first that he was not properly admonished by the trial judge.

On April 14, 1972, defendant committed an armed robbery at a gas station in Galesburg, Illinois; when he was arrested for that crime on April 18, 1972, he disarmed two police officers and shot one with the officer's own pistol. While waiting trial he escaped from Knox County Jail but was captured in a few hours. As a result of a negotiated plea all charges except attempt murder were dropped.

The transcript of proceedings show the defendant's counsel and the State's Attorney indicated to the court that there had been plea negotiations resulting in an agreement. The judge asked defendant if that were true. The remaining discussion which took place follows:

"Court: You've discussed this matter, have you not, at length with your attorney?

Defendant: Yes, I have.

(Then a discussion of the details of the plea bargaining ensued between the Court, the State's Attorney and Defendant's counsel) then

Court: Now, I'm addressing my remarks to you, Mr. Bell. Do you understand that to be the agreement entered into by and between your attorney and Mr. Woolsey?

Defendant: Yes, Your Honor.

Court: You authorized your attorney to enter into such plea bargaining agreement, is that correct?

Defendant: Yes, Your Honor.

Court: Are there any questions that you want to ask of me at this time concerning that matter?

Defendant: No, sir.

Court: You understand that your plea of guilty here, of course, would amount to an admission on your part that you had done the matters and things that are alleged in Count I of the indictment, and if the matter was approved by the Court, the Court would sentence you to an indeterminate term of not less than 5 nor more than 10 years in the penal system of the State of Illinois, which means Joliet?

Defendant: Yes, Your Honor.

Court: Do you understand that?

Defendant. Yes, sir, Your Honor.

Court: Very well, the Motion of the Defendant to withdraw his plea of not guilty is allowed and the plea of the defendant of guilty to Count I of the indictment is accepted by the Court, ordered entered herein and found by the Court to have been knowingly and understandingly made herein by the defendant as a result of the plea bargaining stated here to the Court in open Court."

Aggravation and mitigation was waived. An adequate factual basis for the plea was presented to the court by the State's Attorney and the defendant was sentenced pursuant to the plea agreement.

The embodiment of constitutional and statutory standards for trial-judge procedure at plea dispositions is Supreme Court Rule 402 (50 Ill.2d R 402). Substantial compliance with Rule 402 obliges judges to tell defendant what his rights are (admonishments), ascertain the voluntary nature of defendant's waiver of rights, make sure defendant knows plea consequences (understands) and finally that a factual basis for the plea is determined. Rule 402(e) requires an affirmative showing, placed on the record, of substantial compliance.

Defendant contends, first, that the trial judge did not tell the defendant the nature of the charge (Rule 402(a)(1)).

Second, he did not tell the defendant that he had the right to plead not guilty; or to persist in that plea if it was already made, or to plead guilty (Rule 402(a)(3)).

Third, he did not tell the defendant that if he pleads guilty there will not be a trial of any kind, so that by pleading guilty he waives the right to a trial by jury and the right to be confronted with the witnesses against him (Rule 402(a)(4)).

Clearly, this is not a classic case of admonishment, yet the jury trial had commenced; voir dire examination of jurors had begun that morning although the jury had not been finally selected. After the noon recess defendant's attorney stated that defendant wished·to withdraw his demand for a trial by jury and plead guilty to Count I. The court· then asked defendant,

"It is your desire to withdraw your plea of not guilty heretofore entered to Count I of the indictment herein, the count being for the attempted murder? Is that true?

Defendant: Yes, sir.

Court: You've discussed this matter, have you not, at length with your attorney?

Defendant: Yes, I have.

Court: May I inquire as to what this grows out of?

Defendant's Lawyer: Your Honor, recent correspondence from our proposed defense witness, Dr. Werner Tuteur.

Court: I didn't have that in mind exactly. My next question to him is going to be as to whether there were any promises, any inducement were held out to him in this matter. * * *."

■■ The court did tell defendant the nature of the charged. "The count being for the attempted murder." Admonishment of the crime by[1] name has been held sufficient. (*People v. Wintersmith*, 9 Ill.App.3d 327.) Further, at the arraignment the court read the indictment to the defendant. This court held in *People v. McCrady*, 131 Ill.App.2d 836, that the total record must be considered to determine if the defendant knew the nature of the charge against him. The following appears in the record:

"Court: You have had an opportunity to read those indictments and to discuss the same with your attorney, is that correct?

Defendant: Yes, sir.

Court: Do you feel that you are informed as to the nature of the charges contained in each count of the indictment?

Defendant: Yes, Sir."

Thereafter, the court read each count to defendant and asked how defendant wished to plead, i.e., guilty or not guilty. He was further asked if he understood. He replied yes and at that time plead not guilty to each count after it was read to him.

While it is true that the trial judge, on the afternoon of October 16, did not tell defendant that he had a right to persist in his plea of not guilty, the entire record shows that defendant fully understood that right.

Again, it is true that the trial judge, on the afternoon of October 16, did not in so many words tell the defendant that by pleading guilty he waived the right to a jury trial and the right to be confronted with the witnesses against him. Defendant had participated for several hours that morning in the voir dire of prospective jurors. The record further shows that he had fully discussed the entire matter with his attorney. He had been given a list of witnesses who it was expected would testify against him as well as copies of statements made by those witnesses.

---

[1] Trial had commenced Monday, Oct. 16, 1972. On Friday, Oct. 13, 1972 defendant's lawyer had called Dr. Tuteur by telephone. A letter from Dr. Tuteur, to defendant's lawyer dated Oct. 13, 1972 appears in the record.

"Pursuant to our telephone conversation of to-day, please let me explain that in the case of Michael Glenn Bell no psychiatric defense exists. My opinion is based on my findings which are reflected in my report where I stated on page 6, par. 2 that no mental illness exists in the defendant. Likewise, he was not mentally ill during the critical days from April 14 to 18th, 1972. * * * The diagnosis remains the same."

██ Supreme Court Rule 402 does not require a strict literal adherence to every word contained in it but rather requires only substantial compliance sufficient to safeguard the rights of the accused. (*People v. Mendoza*, 48 Ill.2d 371; *People v. Reed*, 3 Ill.App.3d 293.) A defendant who, during the process of jury selection, negotiates a plea can hardly contend that he did not understand his right to a jury trial.

██ The free, voluntary and intelligent character of defendant's plea is disclosed in this record and we find that the trial court in the instant case substantially complied with the requirements of Supreme Court Rule 402 before accepting defendant's guilty plea as knowingly and voluntarily made. As was said in *People v. Anderson*, 10 Ill.App.3d 558, 564, "Supreme Court Rule 402 requires a trial judge to insure that a defendant made, on the record, an intelligent and understanding guilty plea through substantial compliance with the provisions of the rule, but it does not require him to parrot a number of specifically proscribed, formal phrases that would render these constitutional guarantees counterproductive and put in jeopardy the very values they were meant to preserve."

Defendant also contends that the trial court should have ordered a hearing to determine his competency to stand trial.

On August 30, 1972, defendant and his attorney asked the court to appoint Dr. Werner Tuteur to examine the defendant "for the purpose of determining whether the defendant is legally insane or was temporarily insane at the time of the alleged commission of the alleged offense herein, and to report his diagnosis to the Court." On the same day the court granted the request but part of the order came out as follows:

"It is Ordered that the defendant be formally examined to determine the question of his present sanity and sanity at the time of the commission of the alleged offense herein."

The doctor conducted the examination on September 17, 1972, and gave a seven-page report stating "there was no evidence of a major medical illness (psychosis) or of outspoken mental deficiency" but concluding, "It appears further that no mental state existed at that time which could be interpreted as an element of the offense (Chap. 38, Article 6—2 and 6—3) Diagnosis: Sociopathic personality, anti-social reaction."

This unfortunate language was clarified by the doctor in his letter of October 13, when he stated "no mental illness exists in the defendant."

The People also requested an examination of defendant. Dr. Thomas T. Tourlentes examined defendant on September 5, 1972. In his report the doctor stated of the defendant, "He knows right from wrong, he

is aware of the legal proceedings against him, is capable of cooperating with counsel in his own defense. I believe this man is competent to stand trial at this time." The doctor also had an encephalographic study performed on defendant on September 8. The report was, "Normal EEG awake and asleep."

 It is also relevant that defendant's counsel never requested a hearing to determine competency to stand trial. A competency hearing *is not required* unless sufficient facts come to the attention of the trial court that raise a bona fide doubt as to the mental competency of the defendant. (*People v. Franklin*, 48 Ill.2d 254.) There is nothing in the record that indicates that defendant was incompetent. In fact, both psychiatric reports indicate otherwise. The record shows rational, coherent answers by the defendant to questions from the court and it contains no indication from defense counsel that the defendant was unable to understand the charge or to co-operate in his defense. The fact that defendant has a "sociopathic personality" does not raise a bona fide doubt as to his competency. (*People v. Olson*, 46 Ill.2d 167, 171.) It is clear that the trial court was under no obligation to conduct an unrequested competency hearing in the instant case.

For the foregoing reasons the judgment of the Circuit Court of Knox County should be and hereby is affirmed.

Judgment affirmed.

ALLOY and STOUDER, JJ., concur.